**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 3:24-308** |
| **FRANK SUESS, *et al.*,** | : | **(JUDGE MANNION)** |
| **Defendants** | : | |

## MEMORANDUM

Pending before the court is defendant Melissa Driscoll's motion to suppress evidence and for a *Franks* hearing. (**Doc. 184**). For the reasons stated herein, the motion will be **DENIED**.

## I.   BACKGROUND

On November 13, 2024, a federal grand jury issued a 55-count indictment against defendants Frank Suess, Melissa Driscoll, Luis Salgado, Victor Velazco, Warren Pizik, Dave Singh, and Diana Castro. (Doc. 1). The indictment charged the defendants with conspiracy to commit health care fraud, in violation of 18 U.S.C. §1349, ten counts of health care fraud, in violation of 18 U.S.C. §1347, and all but Castro with an additional ten counts of health care fraud. *Id.* Additionally, the indictment charged Suess, Velazco, Salgado, Pizik, and Driscoll with conspiracy to violate the anti-kickback statute, in violation of 18 U.S.C. §371, and sixteen counts of violation of the anti-kickback statute, in violation of 42 U.S.C. §§1320a-7b(b)(1)-(2). *Id.* It

further charged Suess, Velazco, and Driscoll with another thirteen counts of violation of the anti-kickback statute, conspiracy, in violation of 18 U.S.C. §371, obstruction of criminal investigations of health care offenses, in violation of 18 U.S.C. §1518, and two counts of destruction, alteration, or falsification of records in Federal investigations, in violation of 18 U.S.C. §1519. *Id.*

The charges stem from an alleged fraud scheme in which medically unnecessary prescriptions for "foot baths," containing a variety of prescription drugs, and solicited by marketers, were filled, netting profits for the owners of the pharmacies filling them and their co-conspirators. (Doc. 1).

Pursuant to its investigation, the FBI obtained a search warrant for Driscoll's Sterling Pharmacy email account on August 19, 2022. (Doc. 220-1). The search warrant authorized the seizure of any emails, dated January 1, 2018, to December 31, 2020, that "constitute[d] fruits, contraband, evidence, and/or instrumentalities" of the alleged fraud scheme. (Doc. 220-1 at 54-58). The warrant application was supported by an affidavit from FBI Special Agent April Phillips, asserting that:

> [T]here is probable cause to believe that [ ] a scheme was
> implemented by MedX [Marketing Solutions] by Luis Salgado
> to defraud Medicare through the ordering of medically
> unnecessary "foot baths" through a pharmacy belonging to

- 2 -

Melissa Driscoll—Sterling Pharmacy . . . and through the mailing of these medically unnecessary treatments to beneficiaries located in the Middle District of Pennsylvania and elsewhere. Furthermore, there is probable cause to believe that Salgado relied on recruiters to identify beneficiaries who could receive the medically unnecessary foot baths by mail and that one of these recruiters was Gregory Habeeb[.]

*Id.*, ¶ 4. The affidavit also asserted that:

[T]here is probable cause to believe that Driscoll's Yahoo! Account, STERLINGPHARMACY@YAHOO.COM, contains evidence of violations of federal criminal law. Specifically, it is believed that this account will contain evidence relevant to a scheme to defraud Medicare, and potentially private insurance companies, through the marketing, ordering, and dispensing of high-value prescription drugs used in what are commonly referred to as "foot baths."

*Id.*, ¶ 88.

On March 6, 2026, Driscoll filed the present motion and an accompanying brief in support. (Docs. 184, 185). She argues that the search warrant was overly broad, contained material misstatements and omissions, and was not supported by probable cause, necessitating suppression of the evidence. *Id.* On April 10, 2026, the Government filed a brief in opposition.

- 3 -

(Doc. 217). On April 24, 2026, Driscoll filed a reply to the Government's brief in opposition. (Doc. 234). The motion is thus ripe for disposition.

## II.    LEGAL STANDARD

The Fourth Amendment generally requires police to secure a warrant supported by probable cause before conducting a search, unless a recognized exception to the warrant requirement exists. *Lange v. California*, 594 U.S. 295 (2021).

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. const. amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." *Adams v. Springmeyer*, 17 F.Supp.3d 478, 490 (W.D. Pa. 2014) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 753-55, (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the Government.

- 4 -

*Camara v. Mun. Ct. of S.F.*, 387 U.S. 523, 528 (1967). For purposes of the Fourth Amendment, a search "occurs when an expectation of privacy that society is prepared to consider as reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Generally, a search "requires a warrant supported by probable cause." *Carpenter v. United States*, 585 U.S. 296 (2018) (citing *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (internal quotations omitted). An affidavit in support of a search warrant "must contain adequate supporting facts about the underlying circumstances to show that probable cause exists." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).

"[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "[U]nder the reasonable expectation of privacy test, the Fourth Amendment protects against an unreasonable search of an area in which (1) a person exhibits actual, subjective expectation of privacy, and (2) the expectation is one that society

- 5 -

is prepared to recognize as reasonable." *United States v. Ellis*, 270 F.Supp.3d 1134, 1140 (N.D. Cal. 2017) (citing *Katz v. United States*, 389 U.S. 347, 361 (1967)). "Under *Katz*, the capacity to claim Fourth Amendment protection does not strictly depend on a property right in the invaded place, but whether the person asserting the claim has a legitimate expectation of privacy." *Id.* (citations omitted).

"Under the exclusionary rule 'evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure.'" *United States v. Lara-Mejia*, 482 F.Supp.3d 281, 293 (M.D. Pa. 2020) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)). "This prohibition also applies 'to the fruits of the illegally seized evidence.'" *Id.* "The rule operates as 'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Id.* (citations omitted).

## III.   DISCUSSION

The defendant argues that the search warrant: (1) was not supported by probable cause, (2) was overly broad, and (3) failed to include material information that would have barred a finding of probable cause. Each of these arguments will be addressed below.

### A. A substantial basis exists to support the magistrate judge's finding of probable cause.

When a magistrate judge is presented with a search warrant application, his "task . . . is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In making such a determination, the magistrate judge must "consider[ ] the totality of the circumstances, which requires courts to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon [their] specialized training and experiences." *United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (citing *United States v. Arvizu*, 534 U.S. 266, 275 (2002)). Moreover, the magistrate judge must read the officer's affidavit "in its entirety and in a common sense and nontechnical manner." *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir. 1993). Finally,

> "While ideally every affidavit would contain direct evidence linking the place to be searched to the crime, it is well established that direct evidence is not required for the issuance of a search warrant." [*United States v.*] *Jones*, 994 F.2d [1051,] 1056 [(3d Cir. 1993)]. Instead, probable cause to search can be based on an accumulation of circumstantial

- 7 -

evidence that together indicates a fair probability of the presence of contraband at the home of the arrested.

*United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002).

In assessing whether a magistrate judge's probable cause determination was justified, the standard is that:

> [I]f a substantial basis exists to support the magistrate[ ] [judge's] probable cause finding, we must uphold that finding even if a different magistrate judge might have found the affidavit insufficient to support a warrant. The duty of a reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for . . . concluding that probable cause existed . . . We have held that probable cause is a fluid concept that turns on the assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.

*United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (citing *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 2011); *Gates*, 462 U.S. at 232; *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006); *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997)) (internal quotation marks omitted). Moreover, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's 'determination of probable cause

- 8 -

should be paid great deference by reviewing courts.'" *Gates*, 462 U.S. at 236 (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)).

Here, contrary to Driscoll's assertions, the search warrant affidavit provided a substantial basis to support the magistrate judge's probable cause determination. The warrant authorized a search pursuant to suspected federal crimes, including false statements relating to health care matters, mail fraud, and wire fraud. (Doc. 220 at 1). The affidavit prepared by FBI Special Agent April Phillips provided the elements of the offenses, technical background on Medicare, and an overview of foot bath schemes. *See generally id.*

Furthermore, as the Government exhaustively recounts in its brief in opposition, the affidavit contained significant key historical facts. (Doc. 217 at 16-20). The court need not restate every fact that could lend itself to a probable cause determination. Rather, the court notes that the affidavit, read plainly and in a common-sense manner, articulates in great detail how Driscoll, through Sterling Pharmacy, allegedly participated in a scheme to defraud Medicare by fulfilling fraudulent prescriptions for foot baths, utilized third-party marketers to solicit beneficiaries, and frequently communicated with those beneficiaries when they called to complain. (Doc. 220-1, ¶¶ 39-87). Furthermore, Driscoll used the business email for Sterling Pharmacy—

STERLINGPHARMACYINC@YAHOO.COM—in furtherance of the alleged criminal activity. As the Government aptly summarizes:

> [T]he affidavit established probable cause to believe that Driscoll owned and operated Sterling Pharmacy, Sterling Pharmacy filled large numbers of mail order prescriptions for medically unnecessary foot baths, MedX Marketing Solutions generated a large number of orders for foot baths, a significant number of the beneficiaries being prescribed foot baths were not actually seeing a medical provider, Sterling Pharmacy paid MedX Marketing Solutions a large amount of money, there was a written agreement between MedX and Sterling that appeared to demonstrate Driscoll and Salgado's familiarity with one another. Driscoll conducted business on behalf of Sterling Pharmacy using the identified email account, Driscoll referred to MedX by name using that email address when communicating with an insurance fraud investigator, and Driscoll provided false information in response to an investigative request for information concerning footbath medications.

(Doc. 217 at 21-22). Read in its entirety, the affidavit provided ample information to make a probable cause determination that the defendant's email account contained evidence of the alleged crimes.

Finally, as the Government points out, "businesses conduct business through electronic communications, especially email." *Id.* at 23. If probable

cause exists to believe that the defendant took part in a fraud scheme through Sterling Pharmacy, it stands to reason that the Sterling Pharmacy email account would contain evidence thereof.

### B. The search warrant was sufficiently particular.

"[A] warrant may not be issued unless . . . the scope of the authorized search is set out with particularity." *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2019) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)). Particularity requires that the warrant: (1) identifies the specific offense, (2) describes the place to be searched, and (3) specifies the items to be seized in relation to designated crimes. *United States v. Perez*, 712 F.App'x 136, 139 (3d Cir. 2017) (quoting *United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013)).

In considering the particularity requirement with respect to search warrants for digital records, the Third Circuit has determined that "the breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate [judge]." *Yusuf*, 461 F.3d at 395 (citations omitted). Therefore, to satisfy the particularity requirement, a warrant need only be as "specific as possible under the circumstances." *Id.*

Applying this standard, the court in *United States v. Stabile* found that "a broad seizure was required because evidence of financial crimes could have been found in any location on any of [ ] six hard drives, and this evidence very likely could have been disguised or concealed somewhere." 633 F.3d 219, 234 (3d Cir. 2011). Furthermore, in *Yusuf*, the court ruled that search warrants for digital evidence of crimes involving complex financial transactions were sufficiently particular, where: "(1) they specified that agents were searching for evidence of specifically enumerated federal crimes; (2) the search was limited in time . . . and (3) the evidence sought was limited to records pertaining to [specific relevant companies] as well as their principals, officers[,] managers, and employees." *Yusuf*, 461 F.3d at 395.

Here, the search warrant was sufficiently particular under the circumstances. First, the warrant specified the offenses for which probable cause was established, namely, false statements relating to health care matters, in violation of 18 U.S.C. §1035, mail fraud, in violation of 18 U.S.C. §1341, wire fraud, in violation of 18 U.S.C. §1343, health care fraud, in violation of 18 U.S.C. §1347, conspiracy to commit mail fraud, wire fraud, and health care fraud, in violation of 18 U.S.C. §1349, and violation of the anti-kickback statute, in violation of 42 U.S.C. §1320a-7b. (Doc. 220-1 at 6).

Second, the warrant described the place to be searched, Driscoll's Sterling Pharmacy email account—STERLINGPHARMACY @YAHOO.COM. *Id.* at 3. Third, the warrant specifies, in great detail and length, the items to be seized by their relation to designated crimes. *See id.* at 6-7.

Furthermore, Driscoll argues that the warrant was overbroad in the timeframe it authorized search for, and because it permitted a general search of all emails during that timeframe. With respect to the issue of the timeframe, the warrant authorized a search for "[t]he contents of all emails associated with the account from **January 1, 2018 to December 31, 2020**." *Id.* at 4 (emphasis in original). Driscoll argues that because she did not purchase the pharmacy until March 1, 2018, and because the alleged foot bath scheme did not begin until late 2019, the timeframe should be significantly shorter. The court disagrees. The affidavit alleges that Driscoll's purchase of the pharmacy became effective March 1, 2018, and that shortly after taking over operations, Driscoll "engaged a clearinghouse to obtain out-of-state business" for the pharmacy and transformed it into a high-volume mail order provider. (Doc. 220-1, ¶¶ 40, 51, 53). As the Government points out:

> The purchase of a pharmacy and the rapid transition of its business model, to include engaging a "clearinghouse" or "marketing service," can logically be expected to require some degree of advanced planning and coordination. It is therefore

- 13 -

reasonable to infer that Driscoll engaged in coordination and planning activities, in furtherance of the enumerated offenses, in the approximately two-month period up to her purchase of Sterling Pharmacy effective March 1, 2018. It is also reasonable to infer that Driscoll would have used the Sterling Pharmacy email account to communicate with other persons and develop those plans.

(Doc. 217 at 31-32).

Finally, as for the issue of whether the scope of the warrant was overbroad because it authorized the search of all emails between the specified dates, the court finds it was not. Like the aforementioned *Stabile* and *Yusuf* cases, the search warrant was sufficiently particular in the context of the specific facts and circumstances of this case.

### C. The alleged misrepresentations and omissions were immaterial and would not have impacted the probable cause determination.

To overcome the "general presumption that an affidavit of probable cause supporting a search warrant is valid," the defendant must prove by a preponderance of the evidence: "(1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions were material, or necessary, to the probable

cause determination." *Yusuf*, 461 F.3d at 383 (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)). When a defendant proves "that a false statement necessary to the finding of probable cause was made 'knowingly and intentionally, or with reckless disregard for the truth,' the constitution requires that any evidence derived from the exercise of that warrant [ ] be excluded from a criminal trial." *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) (quoting *Franks*, 438 U.S. at 155).

Moreover, the Third Circuit has clarified that "omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know." *Yusuf*, 461 F.3d at 383 (citations omitted). However, the court has also noted that "all storytelling involves an element of selectivity. We cannot demand that police officers relate the entire history of events leading up to a warrant application with every potentially evocative detail that would interest a novelist or gossip." *Wilson*, 212 F.3d at 787.

Therefore, even when an omission is made with reckless disregard for the truth, the court must determine the materiality of the omitted information. "To determine the materiality of the misstatements and omissions, [the court] excise[s] the offending inaccuracies and insert[s] the facts recklessly

- 15 -

omitted, and then determine[s] whether or not the 'corrected' warrant affidavit would establish probable cause." *Id.* at 789; *see also Yusuf*, 461 F.3d at 383-84 ("When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the 'falsehood created by an omission by supplying the omitted information to the original affidavit'") (internal citation omitted). If it turns out that the "exculpatory facts, when weighed against the inculpatory facts, are not strong enough to undermine a finding of probable cause," the motion to suppress must be denied. *Wilson*, 212 F.3d at 791-92.

Here, Driscoll argues that the search warrant affidavit mischaracterizes her and Jean Tolerico's roles at Sterling Pharmacy, "cherry picks testimony provided by Tolerico," "fundamentally misrepresents Sterling's practices," and "misrepresents the relationship between [her] and Luis Salgado and Gregory Habeeb." (Doc. 185 at 7-9). More specifically, Driscoll asserts that the affidavit overstates Driscoll's role in Sterling Pharmacy and understates Tolerico's role as merely the pharmacist reviewing and filling prescriptions, that it omits Tolerico's statements to law enforcement that she did not know that foot baths were fraudulent, that it misrepresents that only a small number of providers ordered the prescriptions and omits positive reviews of the

- 16 -

pharmacy, and, finally, that it omits statements from Habeeb that he never had direct communications with Sterling Pharmacy or Driscoll, as well as toll records from Habeeb and Salgado showing no communications with Driscoll. (Doc. 185 at 7-10).

Driscoll has failed to demonstrate that any of these alleged misrepresentations or omissions were made with reckless disregard for the truth. Regarding the alleged misrepresentations, Driscoll has failed to show they were, in fact, misrepresentations. Moreover, reasons for exclusion of each of the omissions could range from a lack of substantial relevance or significance, being unnecessarily cumulative information, and a lack of materiality. Indeed, their inclusion in the search warrant affidavit would not change the probable cause determination. In other words, their inclusion was not necessary for the magistrate judge to make his determination.

Paying closer attention to materiality, even if all the alleged deficiencies were remedied in the search warrant affidavit, a finding of probable cause would be justified. A magistrate judge could still determine, based on the affidavit, that probable cause existed due to the ample other evidence provided by Agent Phillips.

Starting with the first alleged deficiency, if the Government mischaracterized the nature of Driscoll and Tolerico's respective roles at

Sterling Pharmacy by overstating Driscoll's degree of involvement and control, it would have no impact on the evidence offered—which the magistrate judge deemed sufficient—to establish Driscoll's role in the fraud scheme. Rather, it could, theoretically, have made her seem less culpable or less prominent in the scheme, but the rest of the evidence regarding her participation in the scheme remains. However, the court notes that it doubts that the affidavit did, in fact, misstate their roles, or, at the very least, that the affidavit contains sufficient information for a magistrate judge to find contrary to Driscoll's assertion. *See* (Doc. 220-1, ¶¶ 52-54) (describing Driscoll and Tolerico's respective roles).

As for Tolerico's omitted statements regarding her lack of knowledge that foot bath prescriptions were fraudulent, (Doc. 220-3), those statements have no bearing on the probable cause determination. Driscoll seems to believe that a judge would have to conclude that because a pharmacist did not know foot bath prescriptions were fraudulent, no one could have. However, while Tolerico's pharmaceutical knowledge is more sophisticated than non-pharmacists like Driscoll, it does not follow that her knowledge of how to participate in a complex fraud scheme is necessarily more sophisticated. In other words, Tolerico's knowledge says nothing about Driscoll's knowledge. Indeed, as the Government notes, the affidavit

- 18 -

provides evidence that Driscoll was knowledgeable. For example, the Government notes that Tolerico also "related that after purchasing Sterling Pharmacy, Driscoll took over all pharmacy operations, handled all insurance billings, and came up with the idea to work with a 'clearinghouse' to obtain out of state mail order business." (Doc. 217 at 51) (citing Doc. 220-3); (Doc. 220-1, ¶ 53).

Turning to the alleged misrepresentations about the number of doctors who ordered the prescriptions and the omission of positive patient reviews, inclusion would, again, not change the probable cause determination. Regarding Driscoll's claim that the affidavit misrepresents that only a few doctors ordered prescriptions and that the affidavit fails to note that primary-care physicians also ordered prescriptions, Driscoll is simply mistaken. The affidavit does mention the orders by primary-care physicians. (Doc. 220-1 at ¶¶ 48, 50, 60, 70-71, 76-77). Moreover, the affidavit notes that two providers in particular ordered "a very large number" of the foot bath prescriptions—Diana Castro and Shamar Williams—and that Gregory Habeeb personally noted that he saw many orders under Castro's name. *Id.*, ¶¶ 57, 78. In other words, the affidavit does not misrepresent the number of doctors, as it provides evidence that two providers accounted for many of the orders.

Finally, positive patient reviews suggest nothing about the fraud scheme. Patient satisfaction does not negate evidence of fraud.

Next, Habeeb's omitted statements as well as his and Salgado's toll records indicating a lack of communications with Driscoll are likewise immaterial. Even if the affidavit included Habeeb's statements that he "never had any direct connection with Sterling Pharmacy" and that he "did not recall the name Melissa Driscoll," the larger context of his statements would justify a finding of probable cause. *See* (Doc. 220-4). As the Government correctly describes that context:

> [W]hile he worked with Sterling Pharmacy and believes he spoke to an unspecified person from Sterling Pharmacy on one or more occasions, he did not have any formal relationship with Sterling Pharmacy, as his work was done through Salgado. That is to say, the affidavit as a whole makes clear that, from Habeeb's perspective, both Habeeb and someone from Sterling Pharmacy (even if Habeeb could not identify any specific person) were in a conspiracy with Salgado.

(Doc. 217 at 55-56). Moreover, as noted in the affidavit, Driscoll entered into a written agreement with Salgado and MedX Marketing Solutions for foot bath marketing, in which Habeeb assisted. (Doc. 220-1, ¶¶ 60-61, 71). Thus, a probable cause determination that a conspiracy existed would still be justified. As for the toll records, Driscoll believes that evidence showing an

- 20 -

*absence* of telephonic communications between her and Habeeb and Salgado would change the probable cause determination. However, by not including that evidence, the affidavit did not necessarily give the impression that communications between them took place. Rather, the absence of any evidence that they communicated or did not communicate lends itself to a plain-reading conclusion that there were no known communications. Furthermore, the toll records do not prove that no communications took place between them, but rather only suggest that no telephonic communications took place dating back to April 4, 2020, months after the alleged marketing agreement was made and payment for those services concluded. (Doc. 220-1, ¶¶ 64, 83). Any potential telephonic communications prior to then were not captured by the toll record data. Thus, such evidence would not undermine the probable cause determination if included in the search warrant affidavit.

Finally, under *Franks*, where there remains a sufficient basis for a finding of probable cause after reading the potentially exculpatory information into the search warrant affidavit, no hearing is required. *Franks*, 438 U.S. at 171-72. Thus, the defendant's request for a *Franks* hearing will be denied.

- 21 -

## IV.   CONCLUSION

For the foregoing reasons, Driscoll's motion will be **DENIED**. An appropriate order shall issue.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 7/16/26

24-308-10

- 22 -